IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

V.                                             No. 1:21-CR-00334-TJK-1

DALE JEREMIAH SHALVEY

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

TO THE HONORABLE TIMOTHY J. KELLY,
DISTRICT JUDGE, UNITED STATES DISTRICT COURT:

COMES NOW, DALE JEREMIAH SHALVEY, by and through his attorneys of record, Cody L. Cofer and James K. Luster, and moves the Court to impose a sentence below the sentencing range set forth in the presentence report (PSR). This motion is based on the statutory factors in 18 U.S.C. § 3553(a).

The PSR reports Mr. Shalvey's advisory Sentencing Guidelines Total Offense Level is 22 and the Criminal History Category is I. The recommended Guideline Imprisonment range is 41 to 51 months. Mr. Shalvey respectfully requests the Court assess a downward variant sentence, and, in support, shows the following:

## A. Mr. Shalvey's complete lack of prior contact with the criminal justice system supports a downward variance.

> *i.* *The Guidelines treat Mr. Shalvey the same as offenders with substantially worse criminal history.*

Mr. Shalvey does not have a juvenile adjudication, an adult criminal conviction, or even a prior arrest. (PSR ¶¶ 61-2). Section 3553(a)(6) of Title 18 directs courts to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. One failure of the Sentencing Guidelines is the Section 4A1.3(b)(2)(A) prohibition of departures below the lower limit of the applicable guideline range for Criminal History Category I. Category I includes defendants with zero criminal history points or one criminal history point. USSG Ch. 5, Sentencing Table. However, the difference between these two groups of defendants is substantial. Fortunately, a prohibited ground for departure may be a valid basis for a variance. *Gall v. United States*, 552 U.S. 38, 49 (2007).

Two defendants with substantially different criminal histories will have a Criminal History Category I. As an example:

> **Defendant A:** Age 38 at the time of the instant offense; At age 16 committed *Organized Retail Theft* and received a supervisory sentence; At age 22, sentenced to probation for *Domestic Violence* and subsequently revoked and sentenced to 90 days imprisonment; At age 27, sentenced to 30 days

imprisonment for *Possession of a Dangerous Drug* (less than 28 grams of Hydrocodone); and at age 31, sentenced to 5 years of probation for distributing fentanyl.

**Defendant B:** Age 38 at the time of the instant offense; never been arrested for any offense.

Defendant A and Defendant B are both Criminal History Category I.

Mr. Shalvey is like Defendant B and is categorized the same as Defendant A. His Guideline calculation is the same as an offender with one criminal history point, despite empirical data showing that the likelihood of recidivism is dramatically lower for offenders with no criminal history points.

ii.    *Among the three groups of offenders within Criminal History Category I, Mr. Shalvey's group has the lowest rearrest rate by a substantial margin.*

The Sentencing Commission collects and analyzes recidivism data. Within Criminal History Category I there are three groups: One-Point Offenders; No-Point Offenders (these have some contact with the criminal justice system); and the No-Contact Group. Mr. Shalvey belongs to the No-Contact Group.

The two most recent publications indicate that No-Point Offenders are approximately 44% less likely to be rearrested than One-Point Offenders. In the Commission's most recent publication, No-Point Offenders had the lowest

rearrest rates (26.8%) and One-Point Offenders had a much higher rearrest rate (42.3%). 2021 U.S. Sentencing Comm'n *Recidivism of Federal Offenders Released in 2010* 26. This 2021 report is consistent with the Commission's earlier findings published in 2017. The 2017 report said No-Point Offenders had a rearrest rate of 30.2%, and One-Point Offenders had a rearrest rate of 46.9%. 2017 U.S. SENTENCING COMM'N *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* 7. Even among this group that is least likely to recidivate, Mr. Shalvey belongs to a smaller subgroup that has an even lower rate of recidivism, the No-Contact Group.

The 2017 report found:

> Offenders with zero criminal history points and no prior contact with the criminal justice system had an 11.7 percentage point lower recidivism rate than offenders with zero criminal history points and some prior contact with the criminal justice system, such as arrests or convictions that do not receive points (25.7% compared to 37.4%).

*The Past Predicts the Future at* 6.

The difference was slightly more pronounced in the 2021 publication. *Offenders Released in 2010* at 28 (12.4% difference).

One criminal history point may not account for much difference between offenders in the higher criminal history categories. But within Category I, the difference is so substantial it undermines the Section 3553(a) factors, specifically avoidance of unwarranted sentencing disparities and promoting

respect for the law. *See* 18 U.S.C. § 3553(a)(2 & 6). The disparity is even more pronounced for defendants like Mr. Shalvey, who have had no prior contact with law enforcement. A downward variance is appropriate because Mr. Shalvey has no juvenile adjudications, no adult criminal convictions, and no prior arrests. The lack of criminal history is even more remarkable considering Mr. Shalvey's calamitous upbringing.

### B. Mr. Shalvey's trauma and lack of support during childhood provide a legitimate basis for a downward variance.

Dale Jeremiah Shalvey, originally born as Dale Jeremiah Grinage, had a wretched childhood. In his youth, he spent more of his time in a parental role, rather than in that of a child. Both his mother, Nanette Shalvey, and father, Dale Grinage, suffered from a grievous drug addiction. (PSR ¶ 71). As we often observe with severe addiction, both of his parents had a criminal records. *See Exhibit 1 – Dale Grinage and Nanette Shalvey Criminal Records.*

The relationship between Nanette and Dale Grinage was unstable because of addiction, abuse, and the pitiless rage of Dale Grinage. Mr. Shalvey vacillated between ambivalence and avoidance. Although he longed for paternal connection and affection, when Dale Grinage was present Mr. Shalvey suffered physical, mental, and emotional abuse. (PSR ¶ 71). Mr. Shalvey powerlessly watched and listened to Dale Grinage abuse Nanette. Mr. Shalvey's father never resided in the home with the family. Mr. Shalvey's

earliest years were a cycle of unplanned appearances by Dale Grinage forcibly entering the home and dealing out abuse to Mr. Shalvey and his mother. When Mr. Shalvey was five years old, his mother changed his last name from Grinage to Shalvey. *See Exhibit 2 – Dale Shalvey's Amended Birth Certificate*. The following year, Mr. Shalvey's father abandoned the family permanently. Although destructive in its own way, abandonment was at least relief from the abuse.

Even with Dale Grinage gone, Mr. Shalvey's mother's addiction continued to claw away any footing for stability or happiness. He witnessed his mother's multiple overdoses and saved her life on several of those occasions. (PSR ¶ 72).

As a boy, Mr. Shalvey was left to care for himself and his younger sister Nina in a home often without basic necessities (e.g., food, water, and electricity). (PSR ¶ 72). He became the "man of the house," repairing appliances, mowing the lawn, helping with Nina's homework, and even intermittently financially supporting the family. Mr. Shalvey continued to do this into early adulthood.

After years of exhaustion and fear, Mr. Shalvey reached out to his uncle, Bernard Shalvey. Soon thereafter, Bernard Shalvey relocated Nanette and Nina Shalvey to North Carolina to help Nanette get into a rehabilitation center. *See Bernard G. Shalvey's Support Letter* at 2. This relocation partially

unyoked Mr. Shalvey and allowed him to continue his college education in West Virginia.

## C. Mr. Shalvey's commitment to self-improvement supports a downward variance.

   *i.    Mr. Shalvey's hard work to obtain an education and skills reduces his chances of recidivism.*

Mr. Shalvey has continuously sought out ways to grow, serve, and forge a life that is consonant with his purpose and values. A commitment to learning is a value that has always shone through in Mr. Shalvey's life. Education is a protective factor to avoid criminality. Data analyzed by the United States Sentencing Commission bears this truth out.

Among offenders released after incarceration, "[r]earrest rates decreased steadily for each successive increase in educational level." *Offenders Released in 2010* at 31. College graduates have a substantially lower rearrest rate compared to offenders with lower education levels. The United Sentencing Commission recently reported, "More than half of offenders who did not complete high school (60.8%) or graduated high school (50.2%) were rearrested. In comparison, 37.2 percent of offenders with some college and 19.6 percent of college graduates were rearrested during the study period." *Offenders Released in 2010* at 31.

Mr. Shalvey earned his high school diploma in 2003 from Wheeling Park High School in Wheeling, West Virginia. For several years, he traveled around

working and searching. Then he decided to attended college at West Liberty University, West Virginia's oldest college or university. In 2009, he obtained a Regents' Bachelor of Arts degree and graduated at the top of his class. *See Exhibit 3 – West Liberty University Degree*. Regents Bachelor of Arts differs from other baccalaureate degrees in that Regents students — in addition to taking traditional college courses — can earn college-equivalent credit for selected work and life experiences. The students write portfolios to obtain these credits. The program is designed for service members or working adults and allows them to balance work and family while remaining committed to pursuing a collegiate career. Life did not present a "traditional" path to higher education, so Mr. Shalvey surveyed what he had available and chose the path that was right for him.

Mr. Shalvey also took various graduate level classes at West Virginia University and obtained an arborist certification. *See Dr. Susan C. Herrick's Support Letter* at 1. Aside from institutional and programmed education, Mr. Shalvey has spent years acquiring knowledge and skills in regenerative farming, woodwork, and raising livestock. (PSR ¶ 84)

> ii.   *Mr. Shalvey leveraged his aptitude and passions to earn a living and share his gifts.*

While attending West Virginia University, Mr. Shalvey discovered a passion for working with his hands. He became a certified arborist and educated himself in woodworking.


*Conference room table crafted by Mr. Shalvey.*

He later started a woodworking business, crafting various sophisticated furniture pieces for other local businesses within the community. Dr. Susan C. Herrick is Mr. Shalvey's friend and his former professor at West Liberty. Dr. Herrick says, "[Mr. Shalvey] has honed skills in furniture making, salvaging huge trees, curing the wood in his own handmade kiln, and creating designs that reveal the unique character of the wood. I visited his enterprise and saw the beautiful results of his efforts." *See Herrick Letter* at 1.

Additionally, Dr. Regina E. Schulte-Ladbeck compliments Mr. Shalvey's craftsmanship and work ethic. She says, "I have seen DJ build two businesses. He had a wood business in Wheeling, WV, which I visited. DJ was extremely proud of his work, especially building wooden tables. We have one of his smaller solid wood tables in our living room, and it is a beautiful work of craftsmanship." *See Dr. Regina E. Schulte-Ladbeck's Support Letter* at 2.

Following his arborist work, Mr. Shalvey participated in an internship at Polyface Farm in Staunton, Virginia. Polyface Farm is a non-industrial food production business. The farm's mission is to "develop emotionally, economically, environmentally enhancing agricultural enterprises and facilitate their duplication throughout the world." At Polyface Farm, Mr. Shalvey discovered regenerative farming. A fellow intern and friend of Mr. Shalvey, Hunter Ward, explained that many interns left the internship discouraged, but not Mr. Shalvey. He was dedicated to creating a successful poultry farm. *See Hunter Ward's Support Letter* at 2.



*An exhausted Mr. Shalvey comforting a sick calf.*

After his internship at the Polyface Farm, Mr. Shalvey began farming and ranching in Pennsylvania, raising chickens and turkeys on open pastures. Eventually, Mr. Shalvey and his wife established Free Folk Pastures in Conover, North Carolina. Free Folk Pastures is a family operated farming and ranching business that values a partnership with animals by organically raising, processing, and marketing its livestock. The farm is within its infancy, yet with love and sweat it has doubled its profits within one year.

DEFENDANT'S MOTION FOR DOWNWARD VARIANCE          Page 10 of 19

Free Folk Pastures also produces and markets wood crafted items such as charcuterie boards and hand-made home décor. Through hard work and faithfulness to their values and purpose, the Shalveys have been able to support their family with Free Folk Pastures. Encouraged by his good fortune, Mr. Shalvey felt his heart called to a grander mission. He hopes to grow Free Folk Pastures into an enterprise that can provide meaningful employment and a sense of community for fatherless young men. *See Bernard G. Shalvey's Support Letter* at 2-3.

 His mentee and friend, Ethan Lane explains, "Since I have known DJ, he has been abundantly clear regarding his calling in life to mentor young men, especially the fatherless, and build community through the tangible, honest, and dedicated work of farming and the trades, a cornerstone of America often lost and forgotten today." *See Ethan Lane's Support Letter* at 1. Ethan adds, "DJ is long-suffering and has lived half of a lifetime in preparation for his calling, carrying the burden of being a fatherless young man himself,

mastering several trades around the country, and brightening people's lives and communities along the way." *Id*.

### D. Mr. Shalvey's faithful care for his family through heartbreak and adversity supports a downward variance.

> *i. During the pendency of the case, Mr. Shalvey has managed to support and lift up even his extended family.*

Mr. Shalvey has created a life with little resemblance to the maelstrom of suffering he navigated in his youth. He has never been addicted to drugs; he has been a consistent contributing member of society; and he has always offered support to those in need—even while awaiting disposition in the instant case.

Mr. Shalvey's sister, Nina Shalvey, sadly followed in the path of their parents. Though she is now in recovery, Nina's drug addiction led her to a brief incarceration in the summer of 2022. During that time, Mr. Shalvey opened his home to and cared for her son, Colton.

Nina wrote, "[Colton] came home as happy as I have ever seen him and all he could talk about was all the fun he had catching chickens and ducks and riding the tractor with Uncle DJ." *See Nina J. Shalvey Support Letter* at 1.

Nina added, "DJ really loves my son and would have kept him forever if I let him." *Id*.



Colton holding a chick on Mr. Shalvey's farm.

Mr. Shalvey has always made an effort to be present in his nephew's life. He has taken Colton on various camping trips and rock-climbing adventures. Mr. Shalvey's close friend, Dr. Regina E. Schulte-Ladbeck detailed, "One climbing season, DJ brought along his young nephew on a few camping and climbing outings. He explained to us that the young man was having a difficult time with his life. DJ hoped that being in the outdoors, getting plenty of exercise, and meeting us, would be beneficial for the young man. I thought that was especially compassionate and thoughtful of DJ, and witnessed how he was very caring about his young relative's future." *See Dr. Regina E. Schulte-Ladbeck's Support Letter* at 2.

> ii.   *Whether in seasons of blessing or loss, Mr. Shalvey honors and serves his family.*

In June of 2021, Mr. Shalvey married his best friend, Tara Aileen Shalvey. The two share a love for family, faith, agriculture, and craftmanship.

The couple eventually had a son; a precious boy named Josiah. Tragically, Josiah passed away two hours after birth. Baby Josiah was laid to rest at the Shalvey's family farm, where their home is also located. Mr. Shalvey designed and built his son's casket.

Though still pained by the inconceivable amount of grief from the loss of a child, the couple was immensely grateful to learn that they were expecting once more. (PSR ¶ 73). Mrs. Shalvey delivered their daughter on March 13 of this year.



Hope Shalvey

Through his work and industry at Free Folk, Mr. Shalvey provides for his growing family. The demands of the farm do not abide by business hours. Mr. Shalvey labors tirelessly and without complaint so that Tara can care for Hope and maintain the home. Mr. Shalvey's regrets for January 6 and fears for his family hold him tightly as he rises each morning and puts his head down each night.

### E. Mr. Shalvey continues to demonstrate that his remorse has motivated reformation and rehabilitation.

For some, the manifestation of criminality occurs in only a moment and just as quickly sublimates. In contrast to many other January 6 defendants, Mr. Shalvey has not boasted nor advertised his participation on social media. To the contrary, he has expressed an immense amount of remorse for his actions and even his presence on that day. Bernard Shalvey wrote, "I have had many conversations with Dale about [the instant case]. He has been very sad and remorseful for the past two years and wishes that he had never gone to Washington." *See Bernard G. Shalvey's Support Letter* at 2-3.   Bernard explains further, "I believe he is on a solid trajectory for the future once his penalty is behind him." *Id.*

Mr. Shalvey has taken accountability for self-reformation. One can easily understand how mental health challenges may have led to the series of criminal thinking errors that precipitated Mr. Shalvey's involvement on January 6. However, even before the events of January 6, he sought out assistance for his mental health. Currently, he attends the Center for Biblical Counseling, Inc. in North Carolina. Per his therapist, Dr. Steve Shores, Mr. Shalvey appears at his sessions regularly, arrives in a timely manner, and is devoted to personal progress. *See Exhibit 4 - Therapy Progress Statement.* Dr. Shores details further, "As he wrestles with issues from his childhood, he is

developing crucial and helpful insights as to how to grow into a full-orbed human being in a difficult world. He is maturing in his outlook. He participates with enthusiasm. He is one of those counselees with whom it's a joy to work, because he is so motivated to grow." *Id.*

### F. Mr. Shalvey's behavior while on pretrial release supports a downward variant sentence.

"Exemplary behavior while on bond" was one of the justifications used by the *Gall* district court to support a downward variance to probation. *Gall v. United States*, 552 U.S. 38, 69 (2007) (Alito, J., dissenting). Ultimately, the Supreme Court found that the district court's variance was reasonable. *Id* at 59 – 60.

At the commencement of the instant case, the Court ordered Mr. Shalvey released subject to appropriate conditions. Since September 2021, Mr. Shalvey has complied with all conditions of release. Additionally, as discussed above, Mr. Shalvey has continued to provide for his family, contribute to his community, and work on improving himself and addressing his mental health needs while on pre-trial release.

### G. Conclusion and Prayer

Mr. Shalvey acknowledges the Court must consider a variety of factors and interests beyond the future of a defendant. For the Shalveys, the care of Hope is the foremost concern. Mr. Shalvey is also burdened by his worry for

the animals he loves and losing the land on which his son is buried. And all this is in peril because of Mr. Shalvey's decisions.

Mr. Shalvey respectfully requests the Court "consider . . . the kinds of sentences available," including supervision with home detention. *See* 18 U.S.C. § 3553(a)(3). Because the guideline range is within Zone D, the advisory sentence excludes probation. (PSR ¶ 110 *citing* USSG §5B1.1, comment.(n.2)). Notwithstanding this guideline provision, statute authorizes probation for not less than one nor more than five years. 18 USC § 3561(c)(1) (PSR ¶¶ 107-8). Further, "[h]ome detention may be imposed as a condition of probation . . . as a substitute for imprisonment." USSG § 5C1.1. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes set forth in [Section 3553(a)(2)]."

Wherefore, DALE JEREMIAH SHALVEY, defendant, respectfully requests the Court assess a sentence below the advisory Guidelines considering all the factors identified in 18 U.S.C. § 3553(a) including those specifically identified in this motion.

Respectfully submitted,

*/s/Cody L. Cofer*
Cody Cofer
Texas SBN: 24066643
COFER LUSTER LAW FIRM, PC
604 E. 4th Street, Suite 101
Fort Worth, TX 76102
Phone: 682-777-3336
Fax: 682-238-5577
Email: ccofer@coferluster.com
Attorney for Dale Jeremiah Shalvey
PRO HAC VICE

*/s/James K. Luster*
James K. Luster
Texas SBN: 24061994
COFER LUSTER LAW FIRM, PC
604 E. 4th Street, Suite 101
Fort Worth, TX 76102
Phone: 682-777-3336
Email: jluster@coferluster.com
Attorney for Dale Jeremiah Shalvey
PRO HAC VICE

*/s/Gregory Stuart Smith*
Gregory Stuart Smith
LAW OFFICES OF GREGORY S. SMITH
913 East Capitol Street, SE
Washington, DC 20003
Phone; (202) 460-3381
Fax: (877) 809-9113
Email: gregsmithlaw@verizon.net
Attorney for Dale Jeremiah Shalvey
LOCAL COUNSEL

CERTIFICATE OF SERVICE

I hereby certify that on **May 4, 2023**, I electronically filed the foregoing document with the clerk for the United States District Court for the District of Columbia, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney for the Government and the U.S. Probation Officer authoring the PSR.

*/s/ Cody L. Cofer*
Cody L. Cofer